## Case No. 14,421.

UNITED STATES v. ADAMS et al.

[1 West. Law J. 315; 10 Hunt, Mer. Mag. 80.]

District Court, S. D. New York. Nov., 1843.

POST-OFFICE LAWS—CARRIAGE OF LETTERS BY PRIVATE EXPRESS.

Construction of the post-office law relating to the carrying of letters by private express. Held, that the carrier of letters in a package is not liable to the penalty, unless he knew that the package contained letters.

This action was brought under the act of congress of 1825, to recover a penalty for a violation of the post-office laws. The following are the sections of the act relied upon: "No stage, or other vehicle, which regularly performs trips on a post road, or on a road parallel to it, shall convey letters, nor shall any packet boat or other vessel which regularly plies on a water declared to be a post road, except such as relate to some part of the cargo." "No person other than the post master general, or his agents, shall set up any foot or horse post for the conveyance of letters and parcels upon any post road, which is or may be established by law, and every person who shall offend herein shall incur a penalty of fifty dollars for each letter or package so carried."

For the prosecution, an agent of the post-office testified that he had seen Stephens, an agent of Adams & Co., take a large pile of letters and some money from a man on board the steamer New Haven, connected with the Norwich & Boston Railroad, and told him he had no right to take the letters. The letter on the top of the pile was directed to London, and a packet sailed the next day. It also appeared that several persons were in the

habit of sending letters by Adams & Co.'s Express, but they were sent in packages, and it did not appear that A. & Co., who had positively refused to carry letters, knew that letters were in the packages. They had instructed their agents not to carry letters,—and that Stephens only went on the Norwich route once, in the absence of the regular agent, and, if he received any money for carrying letters, had done so in violation of the instructions, and had not paid it over. Another ground of defence was that the defendants could be held liable only for procuring the steamboat New Haven to carry letters. That the owners of the boat were not liable in this action, and, as Adams & Co. were only liable for the same penalty as the owners would be, they, defendants, were not liable. And it was shown by the testimony of the captain and the owners of the steamboat that they had no knowledge or suspicion of such letters being carried.

Counsel for prosecution laid great stress on the alleged fact that those expresses operated extensively to the injury of the post-office, and endeavored to elicit testimony to show that such was the case. Some two or three postmasters, or post-office agents, gave it as their opinion that those expresses considerably lessened the post-office revenue. On the other side it was contended that the increased facilities which those expresses gave to traders, and merchants and manufacturers, caused more letters to be written and sent through the post-office than would otherwise be the case.

Hoffman & Watson, for the United States.
Mr. Bushnell, for defendants.

BETTS, District Judge (charging jury). This case presents one of those questions in which courts are so frequently called on to say whether or no a state of facts, which was probably not within the view of the legislature when the penal law was enacted, now comes within the purview of that law. It is said that the business of the defendant was so conducted as to be a violation of the post-office law. The business of defendant has been prosecuted about three years, but a branch of that business has existed for seven years, and it is said that it infringes on the post-office laws. The important questions to be considered are what are the facts proved by argument, and what is the law in relation to them. The government say that the defendants carried letters between New York and Boston, in three different ways: First, in packages of goods, the communication going with the goods to the persons who receive the goods. And that, whatever form they assume, they are still letters, and subject to postage, and that every communication between one individual and another falls within the denomination of "mailable matter," and, whatsoever shape it may be placed in, it is still liable to postage, if carried by mail.

They say that defendant carried letters in packages from merchants, and that letters were carried by express through their carriers, and that Fisher received parcels with money, and delivered them, and that the necessary implication is that all the packages contained money. They say that letters were given to the agents of defendants, and were carried by them from New York to Boston.

There has been some controversy on the other side whether either of those instances was proved. It is said, in regard to the letters carried by Stephens, that the papers delivered to him were actually letters, and were carried by Stephens from New York to Boston, and that Stephens, in doing so, was acting under the authority of defendants. The latter facts must be shown by direct proofs, or by implication. If it was his own act, and was not done as agent for defendants, they cannot be held liable for it under a penal law, though it might be a violation of the statute.

As regards the consummation of the offence, how far is the government obliged to show that it was a letter? It is necessary only to show that the party took what purported to be a letter. The government had no power to open or examine it in order to ascertain if it was a letter. But, if it had the appearance and purports to be a letter, it must be assumed that it was so, until the contrary is shown in evidence. The government need only show that a paper, which seemed to be a letter, was carried, and the person charged with carrying must clear himself, in order to obviate the deduction that it was a letter. If the testimony is that the individual received a letter, with direction to carry it, and that he took it, and went from New York to Boston, the implication is that he performed the trust, and, if there are any facts to show the contrary, it is for him to show them, and leave the jury to say how far it negatives the assertion that he did carry letters. The individual who saw it delivered said that the upper paper was directed to London. He did not see the superscription of the other letters, but they appeared to him to be a pile of letters, and in law that is sufficient to show that it was a letter, and until the contrary is proved the natural signification is that the whole pile was what the upper one appeared to be.—a letter. And it is for defendants to show that the others were but waste paper. Taking it to be proved that Stephens carried a pile of letters from New York to Boston, and Fisher also, and that the packages carried by them ordinarily contained letters, the question arises, is this the act contemplated by the statute? What congress had in view was to interdict the carrying of letters on post roads on which letters were carried by the mail, and also to prevent water craft conveying letters. What does this import? Does it prevent stages or water craft from carrying individuals with letters on their persons? Do stages on post roads, carrying passengers with letters, violate the post-office law? Does the steamboat carrying a man with his trunk full of letters, amount to a conveyance of letters under the act of congress? I apprehend not. We must give a business construction to the act. Congress only intended to prevent letters being carried by vessels or coaches.

In order to illustrate this, it may be well to advert to the manner in which it was done twenty years back. At that time, some open box was kept in vessels, in which letters were deposited, and the master did not know where the letters were to go, but he knew that the letter was there, and the vessel was thus in the direct act of carrying letters; and if she carried letters, unless with some portion of goods, she then carried letters contrary to law. But when the master conveyed a box which he could not open, though such box contained one or a thousand letters concealed from him, the act did not apply to it, and it was not carrying letters, but carrying baggage, and was not an offence against which congress had legislated. Their intention was to prevent the open carrying of letters by vessels or stage coaches. So, also, stage coaches, which had places purposely to carry letters, violated the law by carrying trunks containing letters, or passengers with letters in their pockets. But it was found that congress had not gone far enough to protect the post-office, and an act was passed to prevent persons from starting a horse or foot post on a mail road. But it is not to be supposed that a man going from one place to another could not carry a letter. The act only intended that carrying letters should not be his ordinary business. If it was, then he violated the act. Seven or eight years back this running of expresses commenced, and it is said that it has been a great means of withdrawing from the regular mails a large portion of its appropriate business. It may be an evil of great magnitude; and, from the testimony which has been produced, there is reason to suppose that government loses greatly by it. But that is not the question we have to consider. It is only for us to enquire, is it an offence, under the act of congress? If it is an evil, congress had sufficient time to rectify it during eight years. And whether they deemed it not worth regulating, or not within their power, they have not legislated on those facts; and the court is now called on to say, do these acts come under the act of 1825?

My instructions to you are that it must be proved to you, in order to charge the defendants, that these parties either had some carriage which was engaged in carrying letters on a post road, or on one parallel to a post road. It must be proved that the steamboat New Haven was in the practice of carrying letters, distinct from their enclosure in trunks or merchandise in the vessel. And,

if that is proved, it must be also shown that defendants advised or assisted the owners of the vessel in carrying letters, distinct from their enclosure in trunks or merchandise in the vessel. And, if that is proved, it must be also shown that defendants advised or assisted the owner of the vessel in carrying letters If so, they were liable to a penalty of fifty dollars for each offence. I think that the 24th section of the act presents some difficulty so as to make it reach the steamboat New Haven. But, in order to give it as much scope as possible, I will say that, if it is proved that the steamboat carried letters under the advisement of defendants, it is a violation of the act. Or if defendants used any sort of carriage or conveyance, no matter what you may call it,—a cart, or anything else,—to carry letters from this to Boston, they are liable to the penalty. But under this law they are not liable for letters in a package. concealed from them, unless they knew it contained letters. If congress chooses to prevent letters being so carried, they may pass an act in relation to the land as well as to the water, rendering a man liable for having prohibited articles, though ignorant that they were there. But, as long as congress does not use such language, the court will not suppose that congress meant to punish a man who was ignorant that he was doing wrong. You must find that the steamboat carried letters, and that defendants were assisting in it; or that they had a vehicle in which they were carried; or that they aided and assisted others in carrying letters on a mail road or a road parallel to it.

As to the individual acts of Stephens and Fisher, if the defendants forbid their agents to carry letters, and yet they did so, the offence becomes that of the agents, and not theirs. Though these men were then agents. the defendants are not liable for their acts, further than they conformed to their positive or general instructions. But, if it is proved that Fisher was employed by defendants to carry letters, then they are liable. But nothing in the prosecution calls on you to denounce them as liable, because they carried letters If defendants carried letters on their persons, this suit does not come under the act, as the offence charged is that they employed the steamboat to carry letters.

Verdict for defendants.